# EXHIBIT 1

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Case No.: 24 CV _____

| | |
|---|---|
| TELIA KIVETT; WANDA NELSON FOWLER; the REPUBLICAN NATIONAL COMMITTEE; and the NORTH CAROLINA REPUBLICAN PARTY, <br><br> *Plaintiffs* <br><br> v. <br><br> NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as members of the North Carolina State Board of Elections, <br><br> *Defendants.* | **COMPLAINT** |

NOW COMES Plaintiffs Telia Kivett, Wanda Nelson Fowler (collectively "Individual

Plaintiffs"), the Republican National Committee ("RNC"), and the North Carolina Republican

Party ("NCGOP") (collectively, " Plaintiffs"), by and through undersigned counsel and pursuant

to Rules 7 and 57 of the North Carolina Rules of Civil Procedure and N.C. Gen. Stat. § 1-253 *et*

*seq.*, files this Complaint for Declaratory Judgment against Defendants the North Carolina State

Board of Elections ("NCSBE") and its members, Alan Hirsch, Jeff Carmon, Siobhan Millen, Stacy

Eggers IV, and Kevin Lewis in their respective official capacities, and the NCSBE's Executive

1

Director Karen Brinson Bell (collectively "Defendants"). Plaintiffs seek a declaratory judgment and preliminary and permanent injunctive relief confirming that certain provisions of North Carolina law, specifically, Article 21a of the North Carolina General Statutes, violate Article VI § 2 of the North Carolina Constitution, and remedying the same. In support, Plaintiffs allege as follows:

## INTRODUCTION

1.     The North Carolina Constitution limits voter qualifications to North Carolina residents and only North Carolina residents.

2.     As set forth in Article VI § 2 of the state Constitution, "Any person who has resided in the State of North Carolina for one year and in the precinct, ward, or other election district for 30 days next preceding an election, and possesses the other qualifications set out in this Article, shall be entitled to vote at any election held in this State."

3.     This fundamental voter qualification requirement has been repeatedly reaffirmed by the North Carolina Supreme Court. *See, e.g., Hall v. Wake Cnty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972) ("Since 1868 our Constitution has required a voter to be a person who has 'resided' in the State.").

4.     Congress enacted the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301, *et. seq.* ("UOCAVA") to ensure our military servicemembers and certain other overseas citizens may register and vote in federal elections in a state they are temporarily absent from or previously resided. UOCAVA has the effect of partially preempting state residency requirements for *some*, but not all, overseas voters.

5.     Despite the state Constitution's unambiguous requirement of residency as a prequalification to vote, North Carolina's Uniform Military and Overseas Voters Act ("UMOVA")

purports to extend voter qualifications to certain individuals not covered by UOCAVA and who do not and have never resided in North Carolina. *See* N.C. Gen. Stat. § 163-258.2(1)(e). Specifically, UMOVA defines "covered voter"—a person entitled to all of the voter eligibility, registration, and absentee ballot privileges afforded by the law—to include certain persons overseas who never actually resided in North Carolina. *Id.* Indeed, these overseas "covered voters" may never have resided *anywhere* in the United States, let alone North Carolina. This is a group of voters that fall outside the scope of UOCAVA.

6.     As a result, under UMOVA, certain people not covered by UOCAVA who have never resided in North Carolina (or perhaps anywhere else in this country) are registering to vote and voting in all its elections, including local, state, and federal contests, statewide ballot measures, and any other election where absentee ballots are employed. *See* N.C. Gen. Stat. § 163-258.3.

7.      This is not only a violation of the North Carolina Constitution, but, as applied to Plaintiffs, it dilutes their votes and harms their organizational missions.

8.     Further, North Carolina election officials have unlawfully treated UMOVA voters as if they were UOCAVA voters, including by exempting them from voter identification requirements found in N.C. Gen. Stat. § 163-166.12 that apply to first-time voters. Only UOCAVA voters—not UMOVA voters—are entitled to exemption from those requirements. Accordingly, North Carolina election officials have registered to vote people who have never resided in North Carolina and have allowed them to vote in North Carolina's state and federal election without taking the required steps to verify their identities. This not only exposes our elections to substantial risk of fraud and other misconduct, but it is contrary to state law.

## PARTIES

9.     Telia Kivett is a resident of Salemburg, North Carolina. She is a registered Republican voter in Sampson County. Ms. Kivett has voted in previous local, state, and federal

3

elections and she intends to vote in future elections. As a concerned citizen and a registered voter in North Carolina, Ms. Kivett has an interest in protecting her vote from being diluted by votes cast by individuals who were unlawfully registered as a result of Defendants' unconstitutional actions.

10. Wanda Nelson Fowler is a resident of Cape Carteret, North Carolina. She is a registered Republican voter in Carteret County. Ms. Fowler has voted in previous local, state, and federal elections and she intends to vote in future elections. As a concerned citizen and a registered voter in North Carolina, Ms. Fowler has an interest in protecting her vote from being diluted by votes cast by individuals who were unlawfully registered as a result of Defendants' unconstitutional actions.

11. The Republican National Committee is the national committee for the Republican Party; representing all registered Republicans across both the state and nation, as well as the values they stand for. The RNC serves as the collective voice for the Republican Party's platform. It is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14) and a political party as defined by N.C. Gen. Stat. § 163-96. The RNC's principal place of business is 310 First Street SE, Washington, D.C.

12. The RNC's core mission involves organizing lawful voters and encouraging them to support Republican candidates at all levels of government, including throughout North Carolina. The RNC expends significant time and resources fighting for election security and voting integrity across the nation, including in North Carolina. These efforts are intended to ensure that the votes and voices of its members, its candidates, and the party are not silenced or diluted in any way. Recent rises in non-citizens and other unqualified persons voting or seeking to vote in elections

has forced the RNC to divert its efforts and funds in order to hold elections officials accountable to what both federal and state laws require.

13. The North Carolina Republican Party is a state committee of the Republican Party, as defined by 52 U.S.C. § 30101(15), and a political party as defined by N.C. Gen. Stat. § 163-96. The NCGOP represents the interests of registered Republicans across North Carolina. Its headquarters and principal place of business is 1506 Hillsborough St, Raleigh, NC 27605. The NCGOP represents the interests of registered Republican voters, residing across all one hundred counties in the state. The NCGOP also advocates for the interests of tens of thousands of non-affiliated voters who align with various aspects of the Republican Party platform.

14. The NCGOP's mission and platform largely mirror that of the RNC, including an emphasis on election integrity and security. The NCGOP's core mission includes counseling interested voters and volunteers on election participation including hosting candidate and voter registration events, staffing voting protection hotlines, investigating reports of voter fraud and disenfranchisement, and providing election day volunteers in all one hundred counties across North Carolina. The NCGOP spends tremendous time and effort advocating for its members throughout all levels of state government, working to make sure they are heard both at the ballot box and beyond.

15. The RNC and NCGOP have organizational standing to bring this action. Defendants' as-applied violations of the State Constitution directly impact the RNC and NCGOP's core organizational missions of election security and providing services aimed at promoting Republican voter engagement and electing Republican candidates for office. Defendants' violations of the State Constitution have forced the RNC and NCGOP to divert significantly more of their resources into combatting election illegalities in North Carolina. The RNC and NCGOP's

5

organizational and voter outreach efforts have been and will continue to be significantly stymied due to Defendants' ongoing failures. As a result, the RNC and NCGOP will have no choice but to expend increased amounts of time and money, beyond what they would have already spent, in order to combat this unwarranted interference with their central activities. For example, because of Defendants' violations of the State Constitution, the RNC and NCGOP will need to commit added time and resources into monitoring North Carolina's voter rolls, voter activity, and responding to instances of potential illegal voting in upcoming elections—tasks required of Defendants by law.

16.     Additionally, the NCGOP has associational standing because its members have standing in their own right to challenge Defendants' actions here. The NCGOP represents millions of registered Republican voters across the state of North Carolina, including at least one registered Republican voter in every one of the state's one hundred counties, which is a matter of public record. The NCGOP's members are directly harmed by non-resident voters registering and voting in the state's elections. These members' votes are undoubtedly diluted as a result ineligible voters participating in elections due to Defendants' actions. Additionally, these members' rights to participate in a fair and secure electoral process, free from illegal voting, will be significantly hindered. Ensuring such freedom and security in all elections throughout North Carolina is germane to the NCGOP's organizational mission.

17.     Plaintiffs are further harmed in their ability to effectively compete in elections across the state as Defendants' refusal to ensure that only qualified voters may register and vote in the state's elections risks opening the door to potentially illegal voting and inaccurate election results.

6

18.     The North Carolina State Board of Elections is the state agency tasked with "general supervision over primaries and elections of the state." *See* N.C. Gen. Stat. § 163-22. NCSBE is tasked with ensuring that elections in North Carolina comply with all relevant state and federal laws and, in NCSBE's own words, "ensur[ing] that elections are conducted lawfully and fairly." The NCSBE is the agency responsible for implementing UMOVA. *See* N.C. Gen. Stat. § 163-258.4.

19.     Karen Brinson Bell is the Executive Director of NCSBE and the state's "Chief Election Official" as defined by N.C. Gen. Stat. § 163-82.2. In this capacity, Ms. Brinson Bell oversees elections in all one hundred counties in North Carolina and administers all elections occurring therein. *See* N.C. Gen. Stat. § 163-27(d). Ms. Brinson Bell is sued in her official capacity.

20.     Alan Hirsch is the Chair of NCSBE. He resides in Chapel Hill, North Carolina. Mr. Hirsch is sued in his official capacity.

21.     Jeff Carmon is the Secretary of NCSBE. He resides in Snow Hill, North Carolina. Mr. Carmon is sued in his official capacity.

22.     Stacy Eggers, IV is a member of NCSBE. He resides in Boone, North Carolina. Mr. Eggers, IV is sued in his official capacity.

23.     Kevin N. Lewis is a member of NCSBE. He resides in Rocky Mount, North Carolina. Mr. Lewis is sued in his official capacity.

24.     Siobhan O'Duffy Millen is a member of NCSBE. She resides in Raleigh, North Carolina. Ms. Millen is sued in her official capacity.

## JURISDICTION AND VENUE

25.      This Court has jurisdiction over the claims asserted herein pursuant to N.C. Gen. Stat. § 1-253, *et seq.* and N.C. Gen. Stat. 7A-245.

26.     This Court has personal jurisdiction over NCSBE as it is a state agency in North Carolina.

27.     This Court has personal jurisdiction over Executive Director Karen Brinson Bell, Chair Alan Hirsch, Secretary Jeff Carmon, Stacy Eggers IV, Kevin Lewis, and Siobhan O'Duffy Millen as each is sued in their official capacities as appointed officials in North Carolina. Each is a citizen of North Carolina and each resides in the state.

28.     Venue is proper in this court pursuant to N.C. Gen. Stat. § 163-22(l) and N.C. Gen. Stat. § 1-82.

## FACTUAL ALLEGATIONS

29.     As alleged above, the North Carolina Constitution limits voting eligibility to persons who are residents of the state. N.C. Const. art. VI, § 2.

30.     For presidential elections, the state Constitution allows the General Assembly to reduce the time of residency requirement for those who wish to vote. *Id.* at § 2(2). It does not, however, allow for any alteration to the prerequisite of actual residency.

### I.  *UMOVA Purports to Provide the Right to Vote in North Carolina's Elections to Persons Who Do Not and Have Never Resided in North Carolina.*

31.     Article 21A of Chapter 163 of North Carolina's General Statutes—Uniform Military and Overseas Voters Act ("UMOVA")—sets forth certain conditions upon which non-resident uniformed and overseas voters may register and vote in North Carolina elections. *See generally,* N.C. Gen. Stat. § 163-258.1 *et seq.*

32.     UMOVA defines a "covered voter" within the scope of the statute as:

> "a.     A uniformed-service voter or an overseas voter who is registered to vote in this State.
>
> [ . . .]

c. An overseas voter who, before leaving the United States, was last eligible to vote in this State and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements.

d. An overseas voter who, before leaving the United States, would have been last eligible to vote in this State had the voter then been of voting age and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements.

e. An overseas voter who was born outside the United States, is not described in sub-subdivision c. or d. of this subdivision, and, *except for a State residency requirement*, otherwise satisfies this State's voter eligibility requirements, if:

1. The last place where a parent or legal guardian of the voter was, or under this Article would have been, eligible to vote before leaving the United States is within this State; and

2. The voter has not previously registered to vote in any other state."

*Id.* at § 163-258.2(1) (emphasis added).

33. Critically, under subsection (e) UMOVA's definition of a "covered voter" encompasses certain persons who have *never* been residents of North Carolina, provided that their parent or current legal guardian would have been eligible to vote in North Carolina before leaving the United States and that they have not previously registered to vote in another state. *Id.* at § 163-258.2(1)(e)(1)(2); *see also* §§ 163-258.6 - 258.17 (UMOVA statutes permitting "a covered voter" to register, apply for, and vote an absentee ballot in the same manner as UOCAVA voters).

34. For clarity, this means that UMOVA extends the right to register to vote and to vote in North Carolina's elections to persons who have never lived in the United States, let alone in North Carolina. UMOVA could also be read to extend those rights to certain persons living overseas who may have, at one time, lived in a state other than North Carolina, provided they did

9

not ever register to vote in that state, depending on whether their parent or current legal guardian was eligible to vote in North Carolina "before leaving the United States." [1]

35.     The fact that this subsection allows non-residents to vote in North Carolina elections is buttressed by other definitions within the same section of UMOVA, including subsection (c) which covers persons who were eligible to vote in North Carolina prior to leaving the United States, and subsection (d) which covers persons who would have been eligible to vote in North Carolina prior to leaving the United States but-for the voting age requirement at the time of their departure. *Id.* at § 163-258.2(1)(c)-(d).

36.     Simply put, UMOVA purports to allow certain persons who have never resided in North Carolina—or potentially never set foot in the state—to register and vote in all of the state's elections. *Id.* at § 163-258.3.

## II.     *UOCAVA Does Not Preempt State Residency Requirement for People Who Have Never Resided in the State.*

37.     Federal law partially preempts the North Carolina Constitution's residency requirement for some, but not all, of the overseas voters to whom UMOVA provides the right to vote.

38.     Although UOCAVA may preempt Article VI, § 2 of the North Carolina Constitution's residency requirement for certain voters participating in federal elections, it does not preempt the requirement for voters who never resided in the state, as described in § 163-258.2(1)(e). In short, those voters are not UOCAVA voters, nor are they within UOCAVA's scope.

---

[1] On its terms, the law would even appear to extend North Carolina voting rights to a person who has absolutely no connection to North Carolina at all. Consider, for example, a person whose parents gave birth to him after they left the United States from Florida, who returned to North Carolina without him after he turned eighteen, and who thereafter then left the United States again.

10

39.     UOCAVA requires states to "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office[.]" 52 U.S.C § 20302(a)(1).

40.     UOCAVA's definitions of "absent uniformed services voter" and "overseas voter" do not encompass individuals who have never resided in the state in which they wish to register and vote, including those § 163-258.2(1)(e) purports to exempt from the state constitution's residency requirement. UOCAVA addresses two categories of voters. First, an "absent uniformed services voter" means a "member of a uniformed service on active duty" or "the merchant marine who, by reason of service" who is "absent from the place of residence where the member is otherwise qualified to vote" and such an individual's "spouse or dependent . . . who by reason of the active duty or service of the member, is absent from the place of residence where the spouse or dependent is otherwise qualified to vote[.]" *Id*. § 20310(1). Second, is an "overseas" voter which "means":

> (A) an absent uniformed services voter who, by reason of active duty or service is absent from the United States on the date of the election involved;
> (B) a person who resides outside the United States and is qualified to vote in the last place in which the person was domiciled before leaving the United States; or
> (C) a person who resides outside the United States and (but for such residence) would be qualified to vote in the last place in which the person was domiciled before leaving the United States.

*Id.* § 20310(5).

41.     In both form and function, UOCAVA only extends voter eligibility to voters who are temporarily away from the state and others who at least have been domiciled in the state at some point. *Id*.

11

42. UOCAVA, consequently, does not preempt the North Carolina Constitution's residency qualification for voters who never resided in the state, which applies to "any election held in this State." *See* N.C. Const. art. VI, § 2.

43. Section 163-258.2(1)(e) conflicts with N.C. Const. art. VI, § 2 to the extent it is implemented to exempt certain voters from the residency requirement for individuals voting in North Carolina elections and because neither UOCAVA nor any other federal law preempts art. VI, § 2's residency requirement as it applies to voters who never resided in the state.[2]

## III. *Defendants' Implementation of UMOVA Violates State and Federal Law*

44. Defendant NCSBE members are responsible for "implementing" UMOVA. N.C. Gen. Stat. § 163-258.4(a).

### a. **Defendants' Violations of the State Constitution**

45. Section 163-258.4 imposes various responsibilities on Defendants to administer UMOVA's voting requirements, including the provision of an "electronic transmission system through which covered voters may apply for and receive voter registration materials, military-overseas ballots, and other information...." *Id.* at (c). Defendants' responsibilities also include developing various voting materials for UMOVA voters and instructions for UMOVA voters. *Id.* at (d).

46. UMOVA also permits Defendant NCSBE members to delegate some of the Board's responsibilities for administering UMOVA to Defendant Brinson Bell, including the requirement

---

[2] The final report of the Uniform Military and Overseas Voting Act from the National Conference of Commissioners on Uniform State Laws noted that it expressly intended to expand voting eligibility beyond UOCAVA: "Although UOCAVA makes no provision for these citizens" "[t]he definition of "covered voter," in paragraph (1)(E), also extends the act's coverage to U.S. citizens born abroad who have not established a voting residency in the United States." Uniform Military and Overseas Voters Act, National Conference of Commissioners on Uniform State Laws, Sept. 30, 2010, at 5, available at: https://tinyurl.com/26uuflrj

to "make available to covered voters information regarding voter registration procedures for covered voters and procedures for casting military-overseas ballots." *Id.* § 163-258.4(b).

47.     UMOVA allows a covered voter to register and apply for an absentee ballot utilizing the Federal Post Card Application ("FPCA") or a federal Write In Absentee Ballot ("FWAB"). N.C. Gen. Stat. § 163-258.6.

48.     Notably, both the FPCA registration form and the FWAB require voters to affirm they meet one of several voter eligibility options, one of which states "I am a U.S. citizen living outside the country, and I have never lived in the United States."[3]

49.     Upon information and belief, if an applicant selected this option on the FPCA or FWAB, the NCSBE would accept and process the application, even if the applicant is not a resident of North Carolina and has never been a resident of the state.

50.     The NCSBE website's "FAQ: Military and Overseas Voting" page confirms this: "North Carolina allows citizens who have never resided in the United States to use a parent's voting residence as their own to register to vote, and may request a military/overseas absentee ballot."[4]

51.     Defendants are thus facilitating ongoing violations of the North Carolina Constitution by carrying out their UMOVA responsibilities which necessarily entail permitting unqualified non-residents to vote in North Carolina elections.

52.     As applied to Individual Plaintiffs, this impermissibly dilutes their votes, and as applied to all Plaintiffs, it infringes upon their Constitutional and statutory rights.

---

[3] The FPCA is available at: https://votebymail.ncsbe.gov/app/fpca/fpca-form (last accessed Sept. 27, 2024); the FWAB is available at: https://s3.amazonaws.com/dl.ncsbe.gov/Forms/2021-09-13-FWAB.pdf (last accessed September 29, 2024); and North Carolina's online FPCA form is available at: https://votebymail.ncsbe.gov/app/fpca/fpca-form (last accessed September 29, 2024).
[4] Available at: https://tinyurl.com/24xfp323 .

13

**b. Defendants' Additional Violations of State Voter Identification Law**

53. Additionally, Defendants are, upon information and belief, impermissibly using UMOVA to circumvent their obligations to require certain identification from persons registering to vote. Defendants' failure to require this identification threatens the integrity of North Carolina's elections because it permits the counting of ballots that do not meet the state's legal requirements for counting and it degrades the validity and accuracy of the state's voter registration lists.

54. The federal Help America Vote Act ("HAVA") requires an individual registering to vote to provide certain identifying information on their application. 52 U.S.C. § 21083(a)(5)(A). Individuals who have a driver's license must provide their license number. *Id.* § 21083(a)(5)(A)(i)(I). All others must provide the last four digits of their social security number. *Id.* § 20507(a)(5)(A)(i)(II). Voters who have neither are exempt from this requirement. *Id.* § 21083(a)(5)(A)(ii).

55. North Carolina has enacted a statute to implement this HAVA requirement. N.C. Gen. Stat. §§ 163-82.4(a)(11), 163-82.12, 163-12(d).

56. HAVA further provides for a process to match the identifying information provided by the individual applying to register with the "State motor vehicle authority" and "Commissioner of Social Security" "to verify the accuracy of the information provided…." 52 U.S.C. § 21083(a)(5)(B).

57. North Carolina has similarly enacted a statute to implement this HAVA requirement. N.C. Gen. Stat. § 163-82.12(3), (6)-(8).

58. HAVA requires certain first-time voters who register by mail—either those whose identification numbers officials could not verify or voters who did not provide the identification number—to provide certain identification, or in the case of an absentee voter, a copy of

14

identification when returning their ballot (the "HAVA ID Requirement"). 52 U.S.C. § 21083(b)(2)(A), (b)(3)(B).

59.     HAVA does not exempt a UOCAVA voter from the requirement to provide the driver's license number or last four digits of their social security number, if the individual has either, or the requirement that the state verify the information provided. HAVA does, however, exempt UOCAVA voters from the HAVA ID Requirement. *Id.* § 21083(b)(3)(C)(i).

60.     HAVA requires states treat an absentee ballot from a voter subject to the HAVA ID Requirement, but who fails to comply with it, as a provisional ballot. *Id.* § 21083(b)(2)(B)(ii). HAVA defers to state law on whether that ballot is ultimately counted. *Id.* § 21082(a)(4).

61.     North Carolina has enacted statutes to implement these HAVA requirements. *See* N.C. Gen. Stat. § 163-166.12. One departure from HAVA is that North Carolina applies the HAVA ID Requirement to all registrants whose information officials were unable to match, not just those registering by mail. *Id.* § 163-166.12(d).

62.     North Carolina specifically exempts from its HAVA ID Requirement "[a]n individual who is entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act." N.C. Gen. Stat. § 163-166.12(f)(3).

63.     North Carolina statutes do not exempt voters who have never resided in the state from its HAVA ID Requirement, including UMOVA voters.

64.     On September 24, the NCSBE, through its General Counsel, transmitted to all county election officials guidance (the "Guidance") explaining the applicability of and exemptions from the HAVA ID Requirement for overseas voters. A true and accurate copy of the Guidance is attached hereto as **Exhibit A**.

65.     The Guidance explained correctly the state and federal legal requirements that individuals registering to vote through an FPCA or FWAB must provide a driver's license number or last four digits of their social security number and that county officials are required to attempt to match that information with records in official databases.

66.     The Guidance also stated: "Unlike civilian voters, North Carolina law expressly exempts UOCAVA voters from the requirement to provide HAVA ID if the number fails to match across agency databases. *See* GS 163-166.12(f)(3)." *See* Ex. A.

67.     The Guidance conflates "UOCAVA voters" as UOCAVA defines them, and the UMOVA voters who have never resided in North Carolina, despite the latter plainly not being UOCAVA voters.

68.     For example, the Guidance states: "I'm writing to clarify the requirement for identification numbers for new registrants who register via FPCA or FWAB." *See* Ex. A. North Carolina allows voters who have never resided in the state to utilize an FPCA or FWAB to register to vote. N.C. Gen. Stat. § 163-258.6(a), (b).

69.     On August 25, 2024, Defendant Brinson Bell emailed a member of the Henderson County Board of Elections and blind carbon copied Defendant NCSBE Members and all county election directors (the "Email"). A true and accurate copy of the email is attached hereto as **Exhibit B**.

70.     The Email states: "When a military or overseas citizen voter submits their ballot, neither federal nor state law requires them to provide ID when returning their ballot." *See* Ex. B.

71.     The Email fails to make any distinction between UOCAVA voters who are exempt from the HAVA ID Requirement under state and federal law and voters who never resided in the state who, by definition, are not UOCAVA voters.

16

72.     The Guidance and Email make abundantly clear that Defendants are disregarding the requirements of N.C. Gen. Stat. § 163-166.12(f)(3), which exempts from its HAVA ID Requirement only individuals who are "entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act."

**CLAIMS FOR RELIEF**
**Count One:**
**Declaratory Judgment & Permanent Injunction – Violation of N.C. Const. art. VI § 2 as applied to Plaintiffs**

73.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

74.     Plaintiffs bring this claim for declaratory judgment pursuant to N.C. Gen. Stat.§ 1-253 *et seq.* as to the rights, status, or other legal relations between Plaintiffs and Defendants.

75.     NCSBE is an agency created by statute that only has the authority expressly provided to it by the North Carolina General Assembly and the Constitution of the State of North Carolina.

76.     Article VI, § 2 of the North Carolina Constitution expressly limits the right to vote in the state's elections to those persons who are residents of the state.

77.     Defendants are implementing N.C. Gen. Stat. § 163-258.2(1)(e) in a manner that violates the North Carolina Constitution.

78.     Upon information and belief, NCSBE allows and has allowed persons to register to vote under N.C. Gen. Stat. § 163-258.2(1)(e), including persons who were never and are not presently residents of North Carolina.

79.     As applied to Individual Plaintiffs, this impermissible action dilutes their votes and infringes on their right to free and fair elections. *See* N.C. Const. art. I, § 10.

80.     Similarly, NCSBE's violation of the North Carolina Constitution as applied to Plaintiff RNC and NCGOP has directly harmed their organizational missions, including election integrity, voter outreach, and working so that Republican candidates are elected to office.

81.     Defendants must immediately cease their violations of the North Carolina Constitution and take all steps necessary to remedy the harm they have caused to Plaintiffs by allowing non-resident voters who are not eligible to vote under UOCAVA to register to vote in North Carolina elections.

82.     An actual, real, presently existing, concrete and justiciable controversy exists between Plaintiffs and Defendants in regard to, among other things, whether the NCSBE may allow non-residents to register and vote in North Carolina elections.

83.     Further, the NCSBE's actions have harmed and will continue to harm Plaintiffs by infringing on their constitutional and statutory rights as citizens, voters, participants in the electoral process, and a political party under the North Carolina General Statutes.

84.     Specifically, Plaintiffs seek a declaratory judgment that:

a. The NCSBE's use of N.C. Gen. Stat. §163-258.2(1)(e) is unconstitutional as applied to Plaintiffs as it specifically violates Article VI, § 2 of the North Carolina Constitution; and

b. Any participation by a non-North Carolina resident who has never resided in the state in the state's elections is a violation of Article VI, § 2 of the North Carolina Constitution as applied to Plaintiffs.

c. In order to remedy their violations, Defendants must immediately instruct county boards of election to not process and to segregate any ballots returned by individuals who have never resided in the state, including but not be limited to,

18

anyone who registered to vote by submitting an FPCA or FWAB and checked the aforementioned box on the application;

d. Defendants must also remove the aforementioned eligibility box that applies to voters who have never resided in the United States from its online FPCA application, as allowing it to remain risks facilitating both new and ongoing violations of Plaintiff's Constitutional and statutory rights;

85. Additionally, Defendants must be preliminarily and permanently enjoined from utilizing N.C. Gen. Stat. § 163-258.2(1)(e) in this manner and ordered to cease and correct the harm their unconstitutional actions have caused Plaintiffs, including:

a. Defendants must immediately instruct county boards of election to not process and to segregate any ballots returned by individuals who have never resided in the state, including but not be limited to, anyone who registered to vote by submitting an FPCA or FWAB and checked the aforementioned box on either form;

b. Defendants must also remove the aforementioned box from North Carolin's online FPCA application as allowing it to remain risks facilitating both new and ongoing violations of Plaintiff's Constitutional and statutory rights;

c. Defendants must reject voter registration applications in any form from individuals who have never resided in North Carolina;

d. Defendants must take all steps necessary to ensure that votes from individuals who have checked the aforementioned box on an FPCA or FWAB are not transmitted or counted in any elections;

19

e. Defendants must update their website in order to specify the Constitutional requirements to vote in North Carolina, including the prohibition on non-residents voting in the state's elections; and

f. Defendants must notify the U.S. Department of Defense's Federal Voting Assistance Program ("FVAP") that individuals who have never resided in North Carolina are ineligible to vote in the state's elections and to provide FVAP with updated state-specific instructions to include in FVAP's materials made available to UOCAVA voters on its website and through other means.

**Count Two:**
**Declaratory Judgment and Permanent Injunction– Defendants' Policy and Guidance Regarding UMOVA Voters' Exemptions from the HAVA ID Requirement Violates North Carolina Law**

86. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

87. Plaintiffs bring this claim for declaratory judgment pursuant to N.C. Gen. Stat.§ 1-253 *et seq.* as to the rights, status, or other legal relations between Plaintiffs and Defendants.

88. North Carolina General Statute § 163-166.12(f)(3) expressly exempts UOCAVA voters from the state's HAVA ID Requirement.

89. In contrast, the statute does not exempt UMOVA voters. and they are thus subject to the default HAVA ID Requirement in § 163-166.12(f)(3).

90. As such, the NCSBE's guidance and policies directing county election officials to exempt certain UMOVA voters—specifically those who never resided in the state—from N.C. Gen. Stat. § 163-166.12's HAVA identification provisions is in direct violation of state law.

91. An actual, real, presently existing, concrete and justiciable controversy exists between Plaintiffs and Defendants in regard to, among other things, whether the NCSBE may allow non-residents and non-citizens to register and vote in North Carolina elections.

92. Specifically, Plaintiffs seek a declaratory judgment that:

    a. The NCSBE's policy and guidance to county election officials that voters who never resided in North Carolina but are attempting to register to vote in the state are exempt from the HAVA ID Requirement is null and void because it conflicts with the plain language of N.C. Gen. Stat. § 163-166.12 as the statute specifically only exempts a UOCAVA voter from the HAVA ID Requirement.

93. Additionally, Defendants must be preliminarily and permanently enjoined from enforcing N.C. Gen. Stat. § 163-258.2(1)(e) in a manner that nullifies N.C. Gen. Stat. § 163-166.12's HAVA ID Requirement, and they must be ordered to cease and correct the extreme harm their unlawful actions have caused Plaintiffs, including:

    a. The NCBSE must issue a directive to county boards of elections stating that voters who never resided in North Carolina but are attempting to register to vote in the state are subject to the same HAVA ID Requirement as all non-UOCAVA voters, which may include the requirement to return an identification acceptable under § 163-166.12 or the person's ballot will not be counted;

    b. The NCSBE must instruct county boards of election that any voters who have never resided in North Carolina but are attempting to register to vote in the state but who have not satisfied the HAVA ID Requirement must do so in order for their ballot to count;

    c. The NCSBE must update all guidance and instructions on its website and on other materials to make clear that voters who have never resided in North Carolina but are attempting to register to vote in the state are subject to the HAVA ID Requirement.

21

d. Defendants must notify FVAP that individuals who have never resided in North Carolina are not exempt from the HAVA ID Requirement and to provide FVAP with updated state-specific instructions on the requirement for it to include in FVAP's materials made available to overseas voters on its website and through other means.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue a declaratory judgment that:

   a. The NCSBE's use of N.C. Gen. Stat. §163-258.2(1)(e) is unconstitutional as applied to Plaintiffs to the extent it violates Article VI, § 2 of the North Carolina Constitution; and

   b. Any participation by a non-North Carolina resident who has never resided in the state in the state's elections is a violation of Article VI, § 2 of the North Carolina Constitution as applied to Plaintiffs.

2. Issue a declaratory judgment that:

   a. The NCSBE's policy and guidance to county election officials that voters who never resided in North Carolina but are attempting to register to vote in the state are exempt from the HAVA ID Requirement is null and void because it conflicts with the plain language of N.C. Gen. Stat. § 163-166.12 as the statute specifically only exempts a UOCAVA voter from the HAVA ID Requirement.

3. Preliminarily and permanently enjoin Defendants from accepting any voter registration forms, in any format, from individuals who register or attempt to register under N.C. Gen. Stat. §163-258.2(1)(e) unless and until such persons can confirm residency and provide the necessary HAVA ID Requirement;

4. Order Defendants to take all steps necessary to remedy the harm caused by their unconstitutional actions, including:

   a. Issuing all necessary directives and guidance to county elections officials;

   b. Updating all necessary voter registration forms, including but not limited to the aforementioned FPCA and FWAB forms; and

   c. Updating all public facing websites and voter registration portals within Defendants' custody or control to reflect the constitutional prohibition on non-residents voting in North Carolina elections.

5. Award Plaintiffs their reasonable attorney's fees, litigation expenses, and associated costs incurred in connection with this action, as otherwise permitted by law; and

6. Grant such further relief deemed just and proper.

This, the 2nd day of October, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/   Phillip J. Strach
Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Plaintiffs*

23

**From:** Holland, Parker <Thomas.Holland@ncsbe.gov>
**Sent:** Wednesday, September 4, 2024 5:39 PM
**To:** Holland, Parker <Thomas.Holland@ncsbe.gov>
**Subject:** RE: PLEASE READ: UOCAVA Requests for new registrants

Directors (via BCC):

This is a follow up from the previous email by General Counsel Paul Cox. We have notified the impacted counties individually of those FPCA or FWABS processed without an identification number. Please follow the guidance below for any UOCAVA Requests for new registrants. If you have any questions, please feel free to reach out.

Best Regards,

**Parker Holland, CERA**
**Elections Administration Manager**
O: (919) 814-0727
M: (919) 480-9855



**From:** Cox, Paul <paul.cox@ncsbe.gov>
**Sent:** Wednesday, September 4, 2024 1:01 PM
**To:** SBOE_Grp - Legal <Legal@ncsbe.gov>
**Subject:** PLEASE READ: UOCAVA Requests for new registrants

Directors (via BCC):

I'm writing to clarify the requirement for identification numbers for new registrants who register via FPCA or FWAB. I addressed this briefly in the Huddle chat last Wednesday, but we've gotten some additional questions. So we wanted to be clear about the proper procedures, since UOCAVA ballots start going out Friday.

**If a person is registering for the first time using an FPCA or FWAB, the requirement to provide driver's license/DMV number or, if they don't have it, last four of their social security number, applies to these voters—just like for all other new registrants.** This requirement in HAVA applies to all new registrants, whether they are civilian or UOCAVA registrants. *See* 52 USC 21083(a)(5)(A)(i).

These new registrants were included in the State Board's decision last December to require new registrations going forward to include one of these numbers, unless the registrant affirms that they don't have either number. We regret if that was not clear.

We are going to have our IT department run a list of **new** FPCA/FWAB registrants since the State Board's order was released in December 2023, to flag any that may have been processed without one of these numbers, and we'll share that data with your office for review and action. The list should not be very long, since most FPCA/FWAB voters come through the portal, and the portal doesn't allow a UOCAVA voter to submit their request without including one of these numbers.

**In the meantime, please review your pending FPCAs before ballot transmission on Friday, to ensure that they included one of these numbers**. Be sure to include that number when you enter data into VoterScan. If the record doesn't result in a database match, the FPCA (registration and ballot request) must still be processed. Unlike civilian voters, North Carolina law expressly exempts UOCAVA voters from the requirement to provide HAVA ID if the number fails to match across agency databases. *See* GS 163-166.12(f)(3).

If any new FPCA/FWAB registrant did not include DL/DMV number or last four of their SSN as of December 14, 2023, and they do not state in writing that they lack these numbers, you will need to reach out to the registrant to obtain one of these numbers before processing their registration/ballot request. Please email the voter the attached letter requesting this information. If you do not have an email address for the voter, contact the voter by any other means you have available to obtain the information. Should the letter be returned, you will need to scan in the letter as VOTER CHANGE/UPDATE DOCUMENT in the web scanning app.  If the voter does not return the request for information the FPCA request will need to be spoiled. Please include in the comments "Spoiled-ID not provided." Spoiling a ballot will need to occur before ballots go out on Friday, for any pending requests that did not include one of the required numbers.

Best regards,

**Paul Cox**
General Counsel
NORTH CAROLINA STATE BOARD OF ELECTIONS
RALEIGH, NC 27611
919.814.0700
www.ncsbe.gov

**EXHIBIT**

**B**

From: "Bell, Karen B" <Karen.Bell@ncsbe.gov>
Sent: Sunday, August 25, 2024 5:04pm
To: "lrevelle@reagan.com" <lrevelle@reagan.com>
Cc: "SBOE_Grp - Legal" <Legal@ncsbe.gov>, "Gannon, Patrick" <Patrick.Gannon@ncsbe.gov>
Subject: Your recent letter

Ms. Rebuck, (bcc: State Board Members and county election directors)

We write to express concern about a letter that you wrote that was forwarded to us by the elections director in another county, who received it from a state legislator asking her to respond. Your letter has been forwarded to a wide audience, and unfortunately, it contains false and misleading statements, and partisan remarks.

We are forwarding your letter and our response to the five members of the State Board of Elections and to all county directors so they can respond as necessary if they receive inquiries. This has required State Board staff to spend our limited resources drafting this letter and researching and providing the facts.

We are always available to county board members with questions or concerns about election administration, and we hope that in the future you will reach out to us should you need clarification to avoid the potential spread of false or misleading information, which undermines our common goals of administering elections according to the law and promoting confidence in our elections.

Please see our responses in red to your italicized statements below. We are happy to answer any questions you have about them.

*"I am a member of the Henderson County Board of Elections and have served on the Board for over 6 years. I am frankly very discouraged about the upcoming election. I want to strongly state my belief that if you do not intervene immediately either legislatively or legally, we are going to lose NC to the Dems in November which will likely mean we lose the country. The responsibility will be yours, one way or the other."*

Given the partisan statements in the above, we remind you of the requirements of Article 4A of Chapter 163 of the North Carolina General Statutes. Whether or not the statements violate these provisions, it undermines the public's confidence in the fair administration of elections if their elections officials are widely communicating their desire for a particular outcome in an election they oversee.

*"I am aware that Henderson County has recently received hundreds of new UNOCAVA (Overseas Civilian) applications." There is NO requirement to verify these people AND they do NOT have to provide ID when sending back their vote (by mail or email)."*

UOCAVA, which stands for Uniformed and Overseas Citizens Absentee Voting Act, is a federal law prescribing specific procedures for military and overseas citizens to be allowed to vote in federal elections. Our state has adopted laws under Article 21A of Chapter 163 to carry out these procedures. When military and overseas citizens register to vote under these procedures, they typically provide either their Social Security Number or driver's license on the prescribed federal form. When county officials input those values into the statewide database, the statewide database

automatically attempts to validate those numbers with the DMV and Social Security Administration. For civilian voters, if a number does not validate, state law requires the voter to provide an alternative form of ID before they vote for the first time. UOCAVA voters are expressly exempt from this requirement by state statute and have been for nearly 20 years. GS 163-166.12(f)(3).

When a military or overseas citizen voter submits their ballot, neither federal nor state law requires them to provide ID when returning their ballot.

*"I believe this is a concerted effort to turn Henderson County blue. However, I believe that if you check with other counties, you will see that the numbers have grown substantially in every county. I have heard numbers as high as 300,000 statewide so far. I believe that there is a statewide effort under way to undermine the election."*

Again, we caution you about statements favoring or opposing particular outcomes in the elections you oversee.

We spoke with the Henderson County director, and she confirmed on August 23 that Henderson had received fewer than 150 UOCAVA requests. In 2020, according to State Board data, Henderson County received 347 requests for absentee ballots from military and Henderson County voters living abroad at the time. So, the number of requests is not necessarily high in 2024 as you suggest. Ballots go out in two weeks.

It is also possible that advocacy groups and others are encouraging military and overseas voters who are U.S. citizens to request their ballots. There is nothing wrong with that and, in fact, that activity protected by the First Amendment of the U.S. Constitution.

Until ballot styles are finalized, we do not know how many UOCAVA requests have come in statewide. However, the State Board has no evidence of a "statewide effort underway to undermine the election." If you have actual evidence of such, please provide it to the State Board or to the law enforcement agency of your choice. Otherwise, your statements are sensationalistic and inflammatory and will undermine voter confidence with no facts to back them up.

*"Additionally, Henderson County has received numerous new voter applications that do not have HAVA required information to register (missing Driver's License and/or last 4 of SS or those numbers were not validated). The State BOE has instructed Counties to go ahead a register them without verification."*

This is false. The State Board, both in emails and in a statewide Huddle training session, have instructed county boards as follows:

·   If a new voter does not provide their driver's license number or last four digits of their Social Security number and does not check the box to indicate that they do not have either of these numbers, then the voter will not be registered and will be sent an incomplete letter seeking the missing information.

·   If an applicant provides a driver's license number or last four of their Social Security number but that number does not validate, then their registration should be processed but they must be sent a "request for identification letter." If the voter subsequently provides the ID information, their

profile is updated. If they do not, they must provide an alternative ID proving their identity (so-called "HAVA ID") before voting, or vote provisionally. See GS 163-166.12(c). See the Request for Identification Information letter.

· If a new voter checks the box to indicate they do not have either identification number, then they will be sent a "request for identification" letter and be required to show a HAVA ID before they vote.

*"There have been over 10,000 voters registered state-wide in the last 3 months with unverified or no Dr License or last 4 of SS numbers and therefore HAVE NOT BEEN VERIFIED. So even though the information provided does not match (validated) the application is automatically approved. This is just common sense-the identity of the voter should be verified before entering them on the voter rolls. This is an open invitation for missing or unvalidated applications to be approved and entered into the system."*

See the note above about the additional verification requirement for voters whose ID numbers fail to validate.

Here's some additional important context. When a number does not match, SEIMS will not populate that field, so if we run a query in the database to see which registrations lack these identifiers, the query shows registrations where an identifier *was* provided but the number did not validate. To attempt to validate DLs or last-four SSNs, the SEIMS system sends a database query to DMV databases and the Social Security Administration databases, asking those databases to attempt to match specific information in records on both sides. It is not uncommon for a person's ID to fail validation. There are a number of benign reasons this can occur, and occur regularly, which has been well documented. The DMV/SSA requires exact field matching on name, DOB, DL/SSN so there is no current way to identify possible matches. Common reasons for validation failure are: misspelling of names, variation of names (Bob vs. Robert, maiden name vs. married name, varied designation of surnames for minority ethnicities, etc.), nickname or a missing suffix missing (Jr. or Sr.), inadvertent typos like missed numbers or transposed numbers in DL or last-four SSN, typos in birthdates, and situations where a registrant listed month/day/year in the wrong order on their registration form (there could be national origin-based reasons for this). Recognizing the faults in matching between distinct databases, the General Assembly enacted the provisions in GS 163-166.12(c) which allow a registrant whose DL or SSN did not match to provide HAVA ID either before or when first voting.

*"Another concern is preventing non-citizens from voting. Putting the matter on the ballot in November is too little, too late. The legislature passed SB 747 requiring clerks of superior court to provide lists of people who have been excused from jury duty indicating that they are not US citizens. However, according to the SBOE this will not take place until after the November election."*

This is false. The superior court clerks are (and have) provided such lists, and State Board staff is reviewing those and contacting any registered voters who are identified and for whom a state and federal database check does not show they have obtained citizenship. After nearly every county clerk submitted any records of jurors excused for non-citizenship, there were 9 registrants total identified through these checks statewide. While it is true that federal law (NVRA) prevents us from outright removing these records this close to a federal election, we are nonetheless going to

encourage any of these identified registrants to cancel their registration if they indeed lack citizenship. After the federal election, we can resume this program and conduct removals similar to how we process felon removals, rather than the notices and invitation to cancel registration which is as much as we can do and still comply with federal law.

*"You have allowed the SBOE to drag its feet (I believe on purpose) on all of these matters. This must be rectified if you want to win in November. I am not asking for anything that would be unfair to anyone, I just want the laws enforced to make it fair for everyone. Frankly, the county BOEs are nothing more than a rubber stamp and we have to sit there and vote to certify without any real ability to legally object. Again, the success or failure of this election in November is on you. I implore you to either fix this legislatively or in Court.*

*Best wishes in November, you will need it!"*

Again, we remind you of the prohibitions in the law on political activity by county board members.

We again invite you to contact us in the future to clear up your misunderstandings about election processes and the law.

Regards,

**Karen Brinson Bell, CERA, PMP**

Executive Director, NCSBE

(919) 814-0700 Main Line

